



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA HANSEN,

        Plaintiff,

v.

        Case No: 03-CV-60117

        HON. MARIANNE O. BATTANI

METROPOLITAN LIFE INSURANCE
COMPANY, a foreign corporation,
and ELECTRONIC DATA SYSTEMS
CORPORATION,

        Defendants.
_____/

## ORDER GRANTING DEFENDANT ELECTRONIC DATA SYSTEMS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Electronic Data Systems Corporation's Motion for Summary Judgment (Doc. # 35). The Court heard oral argument on May 4, 2005. The Court took the matter under advisement and ordered supplemental pleadings, which the parties have filed, and the Court has reviewed. For the reasons that follow, the Court GRANTS Defendant's motion.

### I. BACKGROUND AND FACTS

Plaintiff, Rita Hansen, instituted this action against her former employer, Defendant Electronic Data Systems Corporation ("EDS").[1]  Hansen worked for EDS

---

[1] Plaintiff also alleged that Defendant Metropolitan Life Insurance Company ("MetLife") wrongly denied her long-term disability benefits under the long-term disability plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1). The Court already has awarded judgment to MetLife.

as an Administrative Assistant until April 3, 2002, when her employment was terminated as part of a reduction-in-force. While she was an employee, she participated in the EDS Short-Term Disability Policy ("STD Policy"). In Count III of her Complaint, Plaintiff alleges that EDS breached their employment contract when it denied her short-term disability benefits.

The STD Policy is a payroll practice. A summary of the policy is contained in the U.S. Benefit Handbook, which is distributed to all employees of EDS. The Handbook notifies employees that EDS "reserve[d] the right to modify, change, eliminate or add benefit plans at its sole discretion." Def.'s Ex. 3. EDS' infoCentre website also included the following disclaimer.

> Disclaimer. The STD Policy is used by EDS leaders to communicate the parameters of benefit eligibility in relation to short-term disabilities. This publication is only intended as a guideline. None of the information contained herein is intended to give special rights or privileges to specific individuals or to entitle any person to remain employed by EDS. . . . Although some of the guidelines set forth herein may suggest, even strongly, that certain procedures or steps will be followed, these procedures should not be interpreted as altering the at-will employment relationship and do not constitute an employment contract.

Def.'s Ex. 4.

The STD Policy defines the terms "Disabled or Disability" as meaning that,"due to sickness, pregnancy or accidental injury, [an employee. . .is] unable to earn more than 80% of [her] Predisability earnings at [her] Own Occupation for any employer in [her] Local Economy. Def.'s Ex. 5. The Handbook also warns that if an employee leaves EDS, "Eligibility to receive STD benefits will cease on [ ] the last day of employment." Def.'s Ex. 2. p. 81. See also Def.'s Ex. 5 p. 79 ("If you separate from EDS, your eligibility to receive STD benefits will cease on you last day of

employment.").

In December 2001, Plaintiff's back became painful. On February 4, 2002, Dr. Enid Vidal-Rivera, Plaintiff's treating physician, indicated that Plaintiff needed to work from her home. Pl.'s Ex. 4. Specifically, Dr. Rivera wrote, "PT is unable to drive or assume positions for a long standing period due to herniated disc, degenerative joint disease. For this reason pt will require an in home setting work environment until evaluated by neurologist." Id. Based on these restrictions, Plaintiff worked exclusively from her home from February 2002, until March 28, 2002. Hansen logged over 40 hours for each week she worked at home. See Def.'s Ex 8. She received her full salary during that time and until her termination.

On February 28, 2002, a neurologist examined Plaintiff, reviewed her MRI and agreed that Plaintiff had a herniated disc. Pl.'s Ex. 6. The neurologist indicated that Hansen was "unable to perform prolonged driving at this point" and prescribed a spinal rehabilitation program. Pl.'s Ex. 7.

The following month, on March 26, 2003, Dr. Vidal-Rivera released Plaintiff to work at the office on a restricted basis. Dr. Vidal-Rivera limited Plaintiff to four hours per day, two days per week, for a period of six weeks. Pl.'s Ex. 13. Plaintiff subsequently attended a meeting in the office on March 28, 2002, for four hours. On her next scheduled work day, she reported to work and was advised that her job had been eliminated.

On July 16, 2002, five weeks after her termination, Plaintiff submitted her claim for benefits. In her claim, Hansen requested "processing of disability benefits, beginning April 3, 2002."

Synchrony, the company that administered the benefits, responded to the application on May 21, 2002, advising Hansen that she was not eligible because she did not meet the definition of disabled inasmuch as she did not meet the earnings requirement. Hansen was working from home on a full-time basis through her separation date of April 3, 2002.

Hansen appealed the denial. Appeals Specialist Grace L. Corbin upheld the denial based on the earnings test and also because Hansen was not a full-time active employee on the date of her application.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. Proc. 56(C), a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. To avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. Anderson, 477 U.S. 242. The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may

weigh competing inferences for their persuasiveness. Matsushita, 475 U.S. at 574.

## III. ANALYSIS

Defendant moves for summary judgment, arguing that no employment contract existed, and, that even if it did, EDS's conduct was consistent with the STD Plan. The Court assesses the merits of the arguments below.

### A. Plaintiff's employment contract

EDS raises two arguments relative to the parties' employment agreement. The first issue EDS raises is whether the STD Policy is an enforceable contract. Defendant argues that Plaintiff cannot establish a breach of contract because the employment contract between Hansen and EDS was at-will. As support for its position, Defendant relies on cases addressing whether a company's policies and procedures can convert an at-will employment relationship into one that is contractual. See e.g. Lytle v. Malady, 458 Mich. 153, 164-64, 579 N.W.2d 906 (1998); Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579 (1980).

The cases are not relevant to the issue here, whether Plaintiff is entitled to benefits under the STD Policy. The breach of contract claim is not raised relative to Plaintiff's termination; it is raised as to her eligibility for benefits. Without question the policy does not alter the at-will status of Plaintiff's employment. That fact does not bear on the issue of entitlement to disability benefits.

The second argument advanced by Defendant is that the Policy does not give rise to enforceable contract rights because it reserved the right to make unilateral changes to the agreement. In the Benefit Handbook, EDS reserved the "right to modify, change, eliminate or add benefit plans at its sole discretion." Def.'s Ex. C. Defendant

concludes that given this reservation, no mutual assent existed, and no contract arose. EDS relies on Smith v. Chrysler Finance Corp., 101 F.Supp.2d 534, 538-39 (E.D. Mich. 2000) (holding that an arbitration provision was unenforceable where it gave the employer the right to amend, modify, suspend or terminate the arbitration mechanism), as support for its position.

Defendant's reliance is misplaced; Smith is distinguishable. The Smith Court was faced with an employer's attempt to force a sexual harassment claim to arbitration despite the employer's retention of sole discretion over the use of the arbitration process. It involved standards relative to the waiver of a jury trial, which are not necessarily applicable. Here, even with the disclaimer in the Handbook, Plaintiff is entitled to rely on the benefits in place at the time she became eligible, and the waiver cannot preclude an award of benefits. The language cited by Defendant to support its position merely precludes a breach of contract claim arising out of a change to the benefit package. Plaintiff does not raise such a claim.

### B. Compliance with plan terms

Finally, EDS asserts that it is entitled to summary judgment because Hansen was not eligible for the short-term disability benefits. Under the terms of the policy, eligibility is dependent upon employment by EDS and "full-time active" status of an employee regularly scheduled to work at least 30 hours or more each workweek. The STD Policy requires active employment as a condition precedent to the receipt of benefits. In this case, Hansen was terminated before she raised any intention to go on short-term disability leave, and five weeks before she applied for benefits. According to Defendant, these facts preclude her eligibility.

The Court is not persuaded by this argument. Hansen was eligible to receive benefits, provided she was disabled before her termination. When she applied for the benefits is not dispositive.[2] Hansen contends she became disabled as of the March 28, 2002 meeting and/or that she was disabled as of January 16, 2002, when Dr. Vidal-Rivera refused Hansen's request for authorization to return to work until Hansen was evaluated by a neurologist. Nevertheless, the record fails to support Plaintiff's disability onset date; a shortcomings that renders her ineligible for STD benefits.

Notably, although Plaintiff asserts that she was not able to work due to illness or injury, she logged in over forty hours per week, for the eight weeks that she worked from home per Dr. Vidal-Rivera's orders, and collected full pay. Def.'s Ex. 8. EDS uses a SAP time entry system ("SAP"), whereby an individual accounts for work hours through an on-line system. Simpson Decl. at ¶ 6. An employee is responsible for logging in and releasing her own time and has the option of logging time taken for

---

[2]This finding does not aid Plaintiff's position that, because she became disabled while an active employee she was eligible to receive benefits, and her eligibility did not end at her termination. Plaintiff's claims rests on her assumption that the Handbook is ambiguous. On page 77, it specifies that benefits end on the earliest of the following dates, which includes, among other things, the end of the approved maximum benefit duration; the date the employee is no longer an eligible employee; or the date the employee is separated from EDS employment. Pl.'s Supplemental Filing, Ex. 1. On page 79, the Handbook reads "If you separate from EDS, your eligibility to receive STD benefits will cease on your last day of employment." Id. Plaintiff admits that the language indicates that a person's entitlement to benefits for any disability that has not accrued prior to termination ceases upon termination. She asserts that the language also could be read to support her position that a person's entitlement to benefits that has accrued prior to termination, however, is entitled to benefits for the full 26 week term.

Despite Plaintiff's best effort to create a conflict in the language, none exists. The plain language upon which Plaintiff relies is contrary to the interpretation she advances. The earliest of the dates applies: benefits or any entitlement thereto ended on the date of her termination.

vacation, holidays or sick time. Id. at ¶ 7. Moreover, Hansen's contemporaneous documentation undermines her contention that she became disabled after the March 28, 2002 meeting. Not only did she fail to raise the issue of disability at that meeting, she continued to work when she returned home after the meeting, logging nine hours for the day. See Def.'s Ex. 8. Hansen worked a full day the following day as well, logging eight hours in addition to an excused two-hour absence. Hansen never informed her supervisor, Michelle Simpson, that she was disabled or incapable of fulfilling her job obligations, and she was not replaced while she worked at home.

The Court's finding is not altered by Plaintiff's claim that she was working a "modified position" from home and unable to earn more than 80% of her predisability earnings at her own occupation, regardless of how much she was paid to work at her modified position. According to Plaintiff, the money she earned during the months she was working from home was for work outside her own occupation. Plaintiff contends that her occupation did not include therapy and frequent periods of lying down.

To circumvent the eligibility definition, the Court would have to agree that the modified position was not Plaintiff's own occupation; therefore, she was not earning any amount of money at her own occupation due to her disability. Her contention does not withstand scrutiny. Neither the Policy language nor the Handbook support Plaintiff's position.

The STD Policy defines "own occupation" to mean "that activity the [employee] regularly performs and that serves as [her] source of income. It is not limited to the specific position...held with [the] Employer. It may be a similar activity that could be performed with [the] Employer or any other employer." Def.'s Ex. 5 p. 77. Plaintiff was

performing the material duties of her job as an administrative assistant, albeit from her own home rather than the office. Plaintiff mistakenly equates a modified or restricted job with a different occupation. The STD Policy does not define disability in those terms.

In addition, one of the questions and answers included in the Handbook bears directly on the merit of this argument.

> If I return to work under restricted duty at the direction of a medical provider, how is my pay effected?
>
> You will receive your regular compensation for all hours worked while on modified duty. Additionally, you could be entitled to STD benefits for the hours in which you are unable to work.

Def.'s Ex. 2, p. 81. This exchange demonstrates that working a modified position simply is not enough to trigger benefits under the STD Policy. Plaintiff's occupation is not defined by how long it took her to perform her job tasks and is not altered by modifications to the location at which she performed her tasks. The very nature of the STD Policy is counterintuitive to Plaintiff's claim. It is intended to replace lost income, and the receipt of disability benefits requires a loss of earnings from sickness or accidental injury. Therefore, the fact that she suffered an illness is not dispositive; the fact that she continued to work is. Hansen suffered no loss of earnings; she had no income to replace. Accordingly, this Court affirms the denial of benefits.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

_____
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: **JUN 17 2005**

### CERTIFICATE OF SERVICE

Copies of this Opinion and Order were mailed to Matthew L. Turner, David M. Davis and Michelle T. Barrett on this date by ordinary mail and electronic filing.

_____
Deputy Clerk